### E. S. Kenny *against* Udall and Kenny.

The equitable right of the wife to personal property in the hands of her trustees, cannot be disposed of by the husband, without making a suitable provision for her support.

The wife's equity, as it is called, attaches upon her personal property, whenever it is subject to the jurisdiction of the Court, and is the object of a suit, into whose ever hands it may have come, or in whatever manner it may have been transferred: and it makes no difference, whether the application to the Court be by the husband, or his representatives or assignees, in order to obtain possession of the property, or whether it be by the wife or her trustee, seeking a provision out of the property. And this equity is equally binding, whether the transfer of the property be by operation of law, or by the act of the party to general assignees, or to an individual, or whether the particular transfer was voluntary, or made upon a good and valuable consideration. And the Court may, in its discretion, give the whole, or part only of the property, to the wife, according to the circumstances of the case.

Where the husband lives with his wife, and maintains her, and has not misbehaved, the course is to allow him to receive the interest and dividends on her property.

As, where Bank stock, settled by a father on his infant daughter, placed in the hands of the assistant register of this Court, as trustee, to execute the trusts in her favour, declared by the deed of settlement, was, within one year after her marriage, and while she was an infant, sold and transferred by her husband and her, for a valuable consideration, the assignee knowing, at the same time, of the deed of settlement and the infancy of the wife, the assignment, on a bill filed by the wife against her husband and his assignee, was declared to be null and void, so far as respected the wife's equity ; and the husband having misbehaved himself, the dividends were directed to be paid to the wife herself, until she came of age: with liberty for her then to apply for such suitable provision out of the property as might be determined, on the usual reference to a master.

THE plaintiff, the wife of the defendant *Edward M. L. Kenny,* being an infant, and permitted to sue in *forma*

*pauperis,* by *E. Elmendorf,* her next friend, filed her bill the 11th of *November,* 1820, against the defendants. She was the daughter of *Thomas Hewitt,* late of *Cheshire,* in *England,* deceased, who removed to *New-York* about the year 1810, and died here, the 12th of *October,* 1814, possessed of considerable property. The plaintiff was born in *Cheshire,* the 9th of *November,* 1801. Her father owned 310 shares of stock in the *Bank of America* ; and on the 1st of *June,* 1814, executed a deed of settlement, by which he transferred those shares to the *President, Directors and Company of the Bank of America, in trust,* for the following uses : 1. To pay the bank what he owed them ; and then to pay him all dividends on the stock, and to retransfer it, when requested by him in writing : 2. To dispose of sufficient of the stock, to carry into effect the trusts therein after expressed, and to defray the expense of executing them, and also to pay one thousand dollars to his wife, as soon as she might want it, after his decease : 3. To pay his son *Thomas,* 4,000 dollars, as soon after his decease as they might think proper : 4. To pay his daughter *Eliza* (the plaintiff) the dividends on *eight thousand* dollars of the stock, as the same should accrue, for her education, which was to be under the care of her mother, and to transfer the principal to her, (the plaintiff,) at the age of twenty-one years ; and should she die before twenty-one, and without issue, the principal to go to his son *Thomas,* &c. stating other trusts. After the death of *T. Hewitt,* his widow, the mother of the plaintiff, obtained letters of administration upon his estate, and was appointed guardian of the plaintiff. The mother died on the 9th of *October,* 1819. Previous to her death, on petition to this Court, *Isaac L. Kip,* the assistant register, was appointed trustee, to receive the dividends on the 8,000 dollars, and to pay the same over to the mother of the plaintiff, for her education, whereby she became a ward of this Court. On the 19th of *January,* 1818, she married with the defendant *K.,* without

1821.

KENNY
v.
UDALL.

1821.

KENNY
v.
UDALL.

the consent of her mother, being then about sixteen, and at a boarding school. On the 9th of *February* following, upon the petition of her husband, for an immediate transfer of the stock, or a power to receive the dividends, an order was granted that *Mr. Kip*, the trustee, should pay to the defendant *K.* the dividends on the 8,000 dollars, but to continue to hold the principal, in trust, until further order. The bill stated further, that the defendant *K.*, before, or soon after his marriage with the plaintiff, became embarrassed in his circumstances, and with a view to relieve himself, by raising money on the stock, through the agency of *Ezra L. Ingraham,* since deceased, who offered to assist him, negotiated a contract with the defendant, *Richard Udall,* by which it was agreed, that *U.* should pay *K.* 5,000 dollars cash for the stock, and that *K.* and his wife should make an absolute assignment and transfer of the stock to *U.* That during the negotiation, *U.* investigated the title of *K.* and his wife to the stock, and was informed of the terms of the settlement of the stock on the plaintiff by her father. The bill then stated, that after *U.* had paid *K.* 450 dollars, he refused to pay the residue, alleging, that it was a bad bargain; and finally concluded, as his only terms, to pay as follows : 750 dollars in cash, a promissory note, at 60 days, for 1,000 dollars; another note at 90 days, for 820 dollars ; *Udall's* bond to *K.* for 1,000 dollars, payable in four years; and 980 dollars, a premium of insurance on the life of the plaintiff. That *K.* having been arrested on a *ca. sa.,* and not able to find bail for the goal liberties, was under the necessity of accepting the terms so offered. That the defendant, *U.,* was advised by counsel, whom he consulted, that *K.* and the plaintiff could not make an absolute and valid transfer of the stock. An assignment was, however, executed by them, in which the consideration expressed was 8,000 dollars, and a receipt thereon indorsed for that amount in full, which receipt was ante-dated at the request of *U.* That a guaranty, by request of *U.,* was

indorsed on the assignment, stipulating for the performance of the terms, and which was executed by *Ingraham*. That *K.*, a few days after, by the agency of *Ingraham*, procured the two notes to be discounted by *U.*, for 1,663 dollars and 90 cents, and the bond for 500 dollars, and the notes and bond were delivered up to *U.* to be cancelled. That *Ingraham* paid *K.* the 1,663 dollars and 90 cents, but not the 500 dollars. That the plaintiff received no benefit from the money so obtained by *K.* except about 150 dollars, paid for board and wearing apparel ; and *K.* notwithstanding, was thrown into goal, from which he was discharged under the act. That by an order of this Court, granted *June* 17th, 1819. on the petition of *U.*, he was allowed to receive the dividends on the stock, which had accrued from *January* 1st, 1819. *Prayer*, that the assignment of the stock to *U.* may be declared void, that *U.* be directed to reassign the same to some person, to be appointed in behalf of the plaintiff; and that he account to the plaintiff, for the dividends received by him, with interest, and that the order of the 17th of *June*, 1819, be suspended.

The answer of *Udall* admitted most of the facts stated in the bill ; but it denied any unfairness, or undue advantage, in the transaction relative to the purchase of the stock, which he alleged was not worth more than 5,000 dollars. That the assignment and guaranty were prepared without the knowledge of the defendant *U.* That the business was negotiated by *Ingraham*, on whose representations the defendant consented to make the purcha. He denied that he was informed by counsel, that the assignment would not be valid. That *Ingraham* showed him the order of the Court, for the payment of the dividends to *K.*, and the opinion of a lawyer, that by insuring the lives of the plaintiff and *K.*, and obtaining an irrevocable power to receive the dividends, the defendant would be secure in making the purchase. That he agreed with

*Ingraham* to pay 4,000 dollars and give his bond for 1,000 dollars, payable in four years, (or when the plaintiff should be of age,) without interest ; that he consented to the purchase, at the earnest request of *I.*, who represented the situation of *K*, as embarrassed, and that the sale was necessary for his relief. That he advanced to *I.* 1,300 dollars, and *I.* told him, the next day, that he had paid it to *K.* That he was, afterwards, introduced to *K.*, and told him, that if he objected to the terms, that he might return the money, which had been advanced. That the assignment was prepared by counsel, employed, as the defendant believed by *K.*, and duly executed and acknowledged That the guaranty of *Ingraham* was not taken with any fraudulent intent. That the receipt was indorsed on the assignment by *K.*, without any request from the defendant. That it was no part of the contract that any part of the consideration for the purchase of the stock, should be paid for a premium of insurance on the life of the plaintiff or of *K.*, and no such insurance was ever effected. That the only consideration paid by the defendant for the 8,000½dollars of stock, was 2,800 dollars in cash, 1,200 dollars of six per cent. stock of the *United States*, and the defendant's bond for 1,000 dollars, payable as above stated, and which bond was drawn by *Ingraham*. That all the payments were made to *Ingraham*, when no other person was present, and the defendant believes that *I.* paid the amount (after deducting his compensation) to *K.* That the defendant had received the dividends on the stock, since *January* 1st, 1819. That in *April* or *May*, 1819, *I.* brought him the bond for 1,000 dollars, stating, that *K.* was in great want, and, as he said, at the request of *K.*, offered the bond for 500 dollars ; that the defendant paid the 500 dollars, and the bond was destroyed. He denied that the purchase of the bond was any part of the contract for the sale of the stock. He admitted that *K.* had been discharged under the act, and was embarrassed and infirm,

Several witnesses were examined on the part of the

plaintiff; the material facts proved are stated in the opinion of the Court. It appeared that *Ingraham* was dead.

*June* 2d. The cause came on to be heard this day, on the pleadings and proofs.

*Wells*, for the plaintiff, made the following points : 1. That the assignment of the stock, from the plaintiff and her husband to *Udall*, was in violation of the special trusts contained in the deed of settlement of the 21st of *June*, 1814, and therefore void. (*Hyde* v. *Price*, 3 *Vesey*, 437.)

2. That the assignment was void as against the equitable rights of the plaintiff, to have the whole of the stock settled and secured for the separate benefit of herself and her children. (*Jewson* v. *Moulson*, 2 *Atk.* 417. *Like* v. *Beresford*, 3 *Vesey*, 509. *Macaulay* v. *Philips*, 4 *Vesey*, 15. 19. 14 *Johns. Rep.* 527.)

3. That the defendant *U.*, in obtaining the assignment, took an unconscientious advantage of the necessities of *K.*; and admitting it to have been otherwise valid, it ought not to stand, except as security for the amount which *U.* shall satisfactorily prove to have been paid by him for the consideration.

*Slosson*, contra, stated the following points : 1. That the property of the stock in question was a *vested* interest, subject to the limitation over, on the contingency of the wife dying without issue before twenty one. (3 *Bro. C. C.* 3. 1 *Roper on Legacies*, 184.)

2. That the husband, at law, has an absolute right to all his wife's personal estate, and a qualified right to all her *choses in action*, which includes the power of disposing of them. (*Co. Litt.* 351. a. *Comyn's Dig.* tit. *Bar. and Feme*, pl. 81, 82.)

3 That if the husband had a right to dispose of the stock, the wife cannot impeach the transfer, on the ground

1821.

KENNY
v.
UDALL.

that it was unfairly or improperly obtained. That right belongs only to the husband, or those deriving an interest under him. That equity never interferes with the legal right, but leaves it to the husband undisturbed. (2 *Johns. Ch. Rep.* 208. 2 *Atk.* 420. 514. 2 *P. Wm.* 641. 1 *Ves.* 536. 3 *Bro. C. C.* 195. 1 *P. Wm.* 459. 10 *Johns. Rep.* 484. *Doug.* 520. 3 *Vesey*, 617. 9 *Vesey*, 176.)

4. That the stock is legal, not equitable. property; and the wife, on arriving at full age might maintain an action against the bank in whom the title is vested.

5. That the wife, at the time of the transfer, was not a ward of this Court. (1 *Madd. Ch.* 277. *Ambl.* 303. *Cases temp. Ta'bot*, 58. 3 *Vesey*, 506. n. a. 1 *Vesey*, 31.)

6. That even if the stock was equitable property, yet a specific assignment of it, by contract, for a valuable consideration, is valid, and not subject to any equity of the wife for a provision. (1 *P. Wm.* 459. *note.* 2 *Vernon*, 207. 1 *Equ. Ca. Abr.* 58. 1 *P. Wm.* 447. 458. 1 *Vernon*, 7. 2 *Atk.* 551. 11 *Vesey*, 18.)

7. That the dividends on the stock, at any rate, are free from all claims of the wife. (2 *Vesey*, 582.)

8. That if the stock is subject to an equity, it can only extend to a part, and not to the whole; and the full amount of the principal and interest advanced by the defendant ought to be reimbursed.

THE CHANCELLOR. The wife is here the plaintiff, and the bill is against her husband and the assignee of her husband, to set aside an assignment by him to the defendant *Udall*, of her interest in 8,000 dollars of the stock of the *Bank of America*. She was married at the age of sixteen, and is still an infant. The assignment of her interest in that stock, was made by her husband and her, within a year after her marriage; and as far as the assignment was her act and deed, it was and is, of course, null and void, by

reason of her infancy. The case is to be considered precisely as if the husband had alone executed the assignment.

The circumstances attending the sale and assignment of this stock, by the husband to the defendant *Udall*, are of an aggravated nature, and denote an unfair and unconscientious advantage taken of the necessities of the husband. The defendant *Udall* admits, that he knew, at the time of the transaction with *Kenny*, of the existence of the deed of trust or settlement, and that he saw it. By that deed, *Thomas Hewitt*, the father of the plaintiff, makes a disposition of 310 shares which he owned in the *Bank of America*. He makes over those shares to the President, Directors and Company of the Bank, in trust, among other things, to pay to the plaintiff the dividends on 8,000 dollars of the stock, as the same should accrue, for her education, and to transfer to her the principal, at the age of twenty-one; and that if she should die before the age of twenty-one, without issue, the principal was to go to his son *Thomas*. The Bank refused to accept of the trust, and by an order of this Court of the 3d of *July*, 1815, the assistant register of this Court was appointed a trustee, to execute the trust raised by the deed of settlement. The defendant *Udall* admits, also, that he knew that the plaintiff was an infant. It is in proof that the husband was poor, and in embarrassed circumstances, when the sale of the stock took place, through the agency of one *Ingraham*, an intimate friend of the defendant *Udall*. It is admitted that *Udall* was acquainted with this pecuniary embarrassment of *Kenny*, when he entered into the negotiation for the purchase of the stock. It is also in proof, that *Udall* was informed by counsel, whom he consulted, that the plaintiff, being an infant, could not legally transfer her stock. *Udall* was to give nominally 5,000 dollars, for 8,000 dollars in the bank stock; and he says, in his answer, that he paid in cash to *Ingraham*, before the assignment, 1,300 dollars, and 1,500 dollars after the sale, and delivered to him *United States* stock, to

the amount of 1,200 dollars, and a bond for 1,000 dollars. The plaintiff does not admit, that *Udall* ever paid to *Kenny*, or to *Ingraham*, or to his agent, in the whole, above 2,900 dollars, or thereabouts, and that not above 150 dollars ever came to the use of the plaintiff; and there is no other proof of the payments alleged to have been made by the defendant *Udall*. The bond was for 1,000 dollars, payable in four years, without interest; and the defendant admits, that he took it up in the hands of *Ingraham*, and cancelled it, on paying 500 dollars. This last act marks the character of the whole transaction, and shows that the defendant made a most unconscientious speculation out of the distresses of the husband, or the fraud of his agent; and if the inquiry now was, as to the amount of these payments, I should think that the defendant *U.* ought to be put to the proof of his payments, as every person is obliged to do, when strong symptoms of fraud or imposition appear. (3 *P. Wm.* 288. 5 *Vesey.* 48, 49.) There is reason to believe the defendant retained the 980 dollars which were intended to be appropriated as a premium for insurance on the plaintiff's life, until twenty-one, and that he meant to stand as his own insurer, after the application to the company for insurance had failed. It appears, that shortly after this speculation, and after the defendant *Udall* had got into the possession of the dividends of this bank stock, *Kenny* having found no relief from this dissipation of his wife's property, was imprisoned for debt, and discharged under the insolvent act, and continues still embarrassed and infirm. The bill charges, that he was unable to procure the necessaries of life. Dealing in the manner which has been stated, with a necessitous person in distressed circumstances, and for the future and contingent interest of his infant wife, forms a very alarming case, and one that would seem to call for relief, (even if the assignment was otherwise valid,) to the extent of making the assignment stand as a

security only for the amount which the defendant *U.* should satisfactorily prove to have been actually paid.

But independent of any undue advantage taken of the husband, the wife had an equitable interest in that fund, which could not be defeated by the act of the husband; and that interest she is entitled to assert, and to have protected against the claim of the assignee. The right of the plaintiff in this case, was an equitable right, known by the name of the wife's equity, and the husband could not dispose of it, but upon the condition of its being subject to a suitable provision for her support.

The stock was trust property, under the control of the Court, and placed under the care of one of its officers. The legal title, at this time, is probably in the personal representatives of *Hewitt*, and there can be no doubt of the power and duty of the Court, notwithstanding the assignment by the husband to *Udall*, to give full effect to the equitable title of the plaintiff. It is now understood to be settled, that the wife's equity attaches upon her personal property, when it is subject to the jurisdiction of the Court, and is the object of the suit, into whosoever hands it may have come, or in whatever manner it may have been transferred. The same rule applies, whether the application be by the husband, or his representatives or assignees, to obtain possession of the property, or whether it be by the wife or her trustee, or by any person partaking of that character, praying for a provision out of that property. It is equally binding, whether the assignment be by operation of law, or by the act of the party to general assignees, or by particular transfer to an individual, and whether that particular transfer has been voluntary, or been made for a good and valuable consideration.

In *Gardiner* v. *Walker*, (1 *Str.* 503.) the bill was filed by the executor of the testator, to stay the husband, who had instituted a suit in the Spiritual Court for his wife's legacy. Lord *Macclesfield* said, it made no difference who

*The wife's equitable right to her personal property, in the hands of trustees, cannot be disposed of by her husband, without making a suitable provision for her support.*

*The wife's equity, as it is called, attaches to her personal property whenever it is subject to the jurisdiction of the Court, in whatever hands it may be, or in whatever manner it may have been transferred.*

1821.

KENNY
v.
UDALL.

1821.

KENNY
v.
UDALL.

was plaintiff in equity, and he directed, that the money should be disposed of for the benefit of the wife In the case *ex parte Coysegume*, (1 *Atk.* 192.) and in *Elibank* v. *Montolieu*, (5 *Vesey*, 73.) the wife, as in the present case, applied to the Court, and had her equity secured.

Assuming that the defendant *Udall* was a *bona fide* purchaser of the wife's personal estate, for a valuable consideration, or that the same had been fairly assigned to him by the husband. as security for a debt, or in payment of a debt, yet the wife's equity would not be affected. This equity, as the Master of the Rolls said, in *Murray* v. *Lord Ellibank*, (13 *Vesey*, 6.) stands upon the peculiar doctrine of the Court, and we must ascertain the extent of the doctrine, not by general reasoning, but by the practice of the Court. The case of *Jewson* v. *Moulson*, (2 *Atk.* 417.) may be selected as the first direct authority in favour of the wife's equity, as against a particular assignment by the husband of her equitable portion, for a valuable consideration. *Vobe* being indebted to the defendant *Moulson*, assigned over to him all the share which, in right of his wife, he was entitled to, in her father's personal estate. The father had, by will, given the proceeds of his real estate to his executors, in trust, after certain payments charged thereon, to be divided between his sons and his daughter. and if either died before twenty-one, the share of such person was to go to the survivor. This daughter was married to *Vobe*, and had no settlement, and was an infant when the assignment was made to *Moulson*. The case is, therefore, very considerably analogous to the one now before me. There were two bills brought : one by the executors, to be discharged of the trust, upon paying and assigning over the wife's share, and the other by the defendant *M.* to be paid that share, under his assignment. Lord *Hardwicke* held, that there was an equity attached to the property itself, and that the assignee took it subject to that equity. It was an equity grounded upon natural justice, and pre-

*This equity of the wife stands upon the peculiar practice of the Court, and not on any general reasoning.*

vailed equally against the husband and his executors, and his general assignees, and his voluntary assignee. In all these cases, the equity was extremely clear, and the only instance where the party had got the better of that equity, was the case of a particular assignment of a specific article, for a valuable consideration. But in that case, he relied upon the circumstances, that the wife, during all the transaction, was an infant, and a particular object of the care of the Court, and that it was an assignment at once of her whole portion, and that the defendant M. was chargeable with notice of the wife's equity, and that the husband was in debt before he married, and had married the wife clandestinely.

It is remarkable, that in all these particulars, that case, and the present one, correspond; and Lord Hardwicke required a provision to be made for the wife, out of the portion, before the claim of the creditor could be admitted. The parties afterwards agreed to let the wife have half the portion, after deducting the costs, and that the other half should go towards the debt. The Chancellor decreed, that the agreement should be performed, having previously declared, that he should not allow the creditor to receive the whole fortune of the wife, without a provision for her. After this case, it is not so easy to understand, how Lord Thurlow should have been able to say, in Worrall v. Marlar, and Busknan v. Pell, (1 P. Wm. 459. note by Mr. Cox, and 1 Cox's Cases, 153. S. C.) that " he did not find it any where decided, that if the husband make an actual assignment by contract, for a valuable consideration, the assignee should be bound to make any provision for the wife out of the property assigned."

Again, in the case of the Earl of Salisbury v. Newton, (1 Eden, 370.) the wife was held to be entitled to a provision against the particular assignee, who was a creditor of the husband, for a valuable consideration, of the whole of her

1821.

KENNY
v.
UDALL.

equitable interest. The Lord Keeper declared, that the assignment could not stand against the wife and her issue; and he directed an inquiry as to a proper provision for herself and children, and that the overplus, if any, should go to the creditor.

This last case was in 1759, and seems also to have been overlooked by Lord *Thurlow*, for it appears to carry the wife's equity to an extent, which he had not discovered.

The case of *Like* v. *Beresford*, (3 *Vesey*, 506.) put an end to all previous doubts on the subject. Lord *Alvanley* directed the settlement of the property of a married woman, a ward of the Court, and of all the dividends and interest accrued, in opposition to the assignment by the husband, for a valuable consideration. He observed, in the learned review which he gave of all the cases, that Lord *Hardwicke* gave a reason which was convincing, in favour of the wife against any assignee of the husband; that a decision in favour of an assignee for a valuable consideration, would put an end to the equity of the wife. Lord *Hardwicke* and Lord *Northington* had given decided opinions, that an assignment, even for a valuable consideration, would not avail against the wife's equity. The subject came before Lord *A.* again, in *Macauley* v. *Philips*, (4 *Vesey*, 15.) and he said, he was clearly of opinion, that the doubt respecting the assignment of the husband, for a valuable consideration, of the wife's equitable interest, was not well founded, with the single exception, perhaps, of a trust for a term for years of land, and that the assignment for a valuable consideration would not bar the equity of the wife. If the wife's personal fortune be vested in trustees, or be in any way under the control of the Court, or placed within its reach, the Court will not suffer it to be removed, until an adequate provision be made for her.

Afterwards, in *Wright* v. *Morley*, (11 *Vesey*, 12.) Sir *Wm.* *Grant* seemed to pause upon the doctrine so emphatically declared by Lord *Alvanley*, and deduced from the decisions

of Lord *Hardwicke* and Lord *Northington.* The husband had assigned, for a valuable consideration, only a part of his wife's equitable interest. He had assigned 100*l.* out of 260*l.* a year, of dividends of stock held in trust for her, and then had gone abroad and left her without any provision. Sir *Wm. Grant* seemed to think it worth his while to look into the authorities in reference to the question, whether there was any difference between an assignment for a valuable consideration, and by operation of law ; and he considered it to be a litigated point, whether the equity of the wife could be bound or affected by the husband's assignment for a valuable consideration. But he admitted the assignment to stand, to the moderate extent of 100*l.* out of yearly dividends to 260*l.*, and said, that he could not give her the whole of the dividends. It seemed, however, to be admitted, that the wife was entitled to her ordinary equity for a settlement.

I consider the wife's equity, as against any assignment whatsoever and to whomsoever, to be now too well settled to be shaken. The only inquiry is, *to what extent* shall her equity be carried over her personal estate, not yet reduced to the husband's possession. Lord *Hardwicke* intimated, in *Jewson* v. *Moulson*, that upon a bill by the wife, an injunction ought to be granted to stay execution, upon a judgment at law by the husband suing for his wife's right, until a settlement was made upon her. Such an injunction was actually granted by the Court of Exchequer, in *Winch* v. *Page*, (*Bunb.* 86.) and by the Court of Chancery, in *Meales* v. *Meales* ; (5 *Vesey*, 517. *note*;) and, upon general principles of justice, it would appear, that the Court of Chancery ought to restrain the husband from availing himself of any means, either at law or in equity, to obtain possession of the wife's personal fortune, unless he would make a competent provision for her. But we have no concern with that question in this case. The inquiry now is, *how*

1821.

KENNY
v.
UDALL.

*much* of the wife's estate shall be preserved from the hus-
band's assignment?

In *Parker* v. *Dykes*, (1 *Eq. Cas. Abr.* 54. *pl.* 6. *Mich.*
1798, *at the Rolls*,) the wife had a provision left her, by her
father's will, out of the proceeds of real estate directed to be
sold, and the husband became a bankrupt, and died. His
assignees brought their bill to have the land sold, and the
surplus of the monies paid to them. The Court dismissed
the bill, and as the wife was wholly unprovided for, suffer-
ed her to retain the *entire* of this legacy.

This was as against the general assignees of the bank-
rupt husband; and in *Grey* v. *Kentish*, (1 *Atk.* 280. 1 *P.
Wm.* 459. *note*, *S. C.*) Lord *Hardwicke* followed that de-
cision, in allowing to the wife *the whole* provision left her
by her mother, in opposition to the claim of the assignees
of the bankrupt husband. So, again. in *ex parte Coysegame*,
(1 *Atk.* 192.) Lord *Hardwicke* gave to the wife the whole
of an annuity of £40 a year, secured by bond, and be-
longing to her before marriage, as against the assignees of
the bankrupt husband; and he held, that the creditors stand
in the place of the husband, and were not entitled to any
more than he would have been. In *Vandenanker* v.
*Desborough*, (2 *Vern.* 96.) as early as 1689, the wife was
entitled to the interest of £800, invested in land, by the
directions of the testator, for her benefit, and that of her
children; and the Court held, that *no part of that interest*
was liable to the creditors of the bankrupt husband, and
the whole principal and interest was ordered to be settled
according to the will. It is, also, to be here noticed, that in
the case of *the Earl of Salisbury* v. *Newton*, already cited,
Lord *Northington* directed a proper provision for the wife,
against the particular creditor and assignee of the husband,
and that the overplus, *if any*, should go to the creditor.
The case shows, that the extent of the provision depended
upon the circumstances of the case, and might or might
not absorb the whole of the estate. It showed that there

was no precise rule, limiting the provision to a moiety, or two thirds, or to any sum or proportion *less* than the whole. So, also, in *Like* v. *Beresford*, *(ubi supra,)* Lord *Alvanley* observed, that the Court had a complete right, if they thought of it, under all the circumstances, to give to the wife and children, any part, *or the whole*, of the fortune, to which the wife might be entitled.

Other cases have declared a different doctrine, and that the wife is not entitled to the whole of her property to her separate use. This was so said by the Master of the Rolls, in *Burden* v. *Dean; (2 Vesey, jun.* 607.) and the same idea was thrown out in *Wright* v. *Morley*, in respect to a life interest of the wife, and that by the modern cases, the wife only took a portion of that provision, as against the assignees of the husband. In *Beresford* v. *Hobson*, (1 *Madd. Ch. Rep.* 362.) the Vice Chancellor reviewed the cases, and concluded, that where a legacy was left to the wife, posterior to the mortgage, and there was a settlement on her marriage, she was not entitled to the whole of the legacy, as against the assignees of her husband. He said, that in no case had the Court given the whole to the wife. The Court, in the exercise of its discretion, had never tied itself down to any precise rule, but it had never given the whole.

These observations of the Vice-Chancellor, must be taken under some qualification, arising out of that case, for several of the authorities which have been already referred to, are in contradiction to them, if taken in their utmost latitude He refers, also, to the case of *Like* v. *Beresford*, as containing an exception, and that where a *ward* of the Court had been run away with, the Court would not give the husband any part of his wife's fortune. " It has a discretion in such cases, whether it will give the whole, or a part, to the wife." And why not in every case, if the justice of it, and the condition of the wife, require it? The whole of this doctrine, as it was observed by Sir *Wm. Grant*, depends upon the particular practice of the Court, and not on

*The extent of the wife's equity, whether it goes to a part only, or the whole, of her personal property, depends on the circumstances of the case.*

general reasoning; and I think I may venture to say, that the practice of the Court has not been sufficiently fixed and uniform, to form a determinate rule, controling the exercise of the discretion of the Court in the particular case. The question, in every case, is, what is a suitable and adequate provision for the wife, under the circumstances? The provision must have a reference to the whole of the wife's fortune, and to what the husband had previously received.

If the husband lives with his wife, and maintains her, and has not misbehaved, he will be allowed to receive the interest or dividends on her property.

If the husband lives with his wife, and maintains her, and has not misbehaved himself, the course of the Court has been, to leave to him the receipt of the interest or dividends of her fortune, (Sleech v. Thovington, 2 Vesey, sen. 560. Bond v. Simmons, 3 Atk. 20.) In the present case, the husband has misbehaved himself, in the prodigal waste of his wife's fortune, and suffering her to be left helpless and destitute, while still an infant. The interference and purchase by the defendant Udall, with knowledge of the trust and of the infancy of the wife, and of the necessities of the husband, and against the advice of counsel, and upon terms denoting oppression and undue advantage, does not deserve the least countenance or assistance. It is to be presumed, that the bank stock was the whole of the wife's fortune; and the husband would, in an ordinary case, have been entitled to the dividends to maintain his wife, and they were accordingly directed to be paid to him, soon after his marriage. But he has grossly abused his marital right, by selling the whole contingent interest of the wife, in advance; and in justice to the wife, the authority to receive the dividends by him, or by Udall, ought to be withdrawn.

It will be sufficient, in this case, to declare, that the assignment by Kenny to Udall was null and void, so far as respected the equity of the plaintiff, and that her equitable claim to that property remains unimpaired, equally as if no such assignment had been made. I shall further declare, that the assignment was made, and was procured, in

fraud of her rights, and that the orders of this Court directing the dividends to be first paid to *Kenny*, and afterwards to *Udall*, be rescinded; and that Mr. *Kip*, the trustee, be directed to pay the dividends hereafter to arise, and to be received, to the solicitor for the plaintiff, to the discharge of the plaintiff's costs of this suit, and then to pay the dividends not so wanted, until the further order of this Court, to the plaintiff herself, or to her particular orders in writing, to be given, from time to time, as each dividend becomes due. To what extent a provision ought to be made for her, may be determined upon the usual reference, when she arrives at the age of twenty-one, and she then may apply, upon the foot of this decree, for such provision. And it is hereby declared to be the duty of the President, Directors and Company of the *Bank of America*, not to permit any transfer of the shares appropriated in the deed of trust to the plaintiff, (being shares at par to the amount of 8,000 dollars,) without the order of this Court, and that the solicitor for the plaintiff give notice of this decree to the bank.