## Case No. 5,200.

### GALLEGO v. CHEVALLIE.

[2 Brock. 285.] [1]

Circuit Court, D. Virginia. Nov. Term, 1826.

1 [Reported by John W. Brockenbrough, Esq.]

MARSHALL, Circuit Justice. The plaintiff, who resides in Spain, claims a legacy bequeathed to her by Joseph Gallego, deceased. The executor admits assets, and submits the question to the court, whether the plaintiff, as a married woman, can properly demand this legacy? The demand is supported by an instrument of writing, executed by the husband, in which he transfers all his marital rights in this legacy to his wife, and gives her full authority to receive it. Under these circumstances, the course of a court of equity is, to sustain the bill of a married woman, brought by her next friend, and to decree that the legacy shall be paid to herself. But, admitting her right to sue, the executor contends that her husband was indebted to his testator, and that this debt ought to be deducted from the legacy. He also says, that a creditor of the husband has attached a part of this money in his hands in the court of the state, and he submits it to the court to say, whether he is not bound to retain a sum sufficient to answer this demand?

This defence makes it necessary to inquire into the right of the husband to a legacy bequeathed to his wife, and into the rights of the creditors of the husband to such legacy. The common law of England identifies the wife so entirely with her husband, as scarcely to tolerate the idea of her separate existence while they live together. She cannot acquire personal property by a direct conveyance to herself. Her interest is, by act of law, almost in every instance, transferred to her husband, and becomes vested in her. But this rule does not apply to personal estate to which a female is entitled before marriage, and which has not been reduced to possession. This remains her property, and does not vest in the husband by the marriage. The marital right does not extend to the property while a chose in action, but enables the husband to reduce it to possession, and thereby acquire it. The property becomes his, not upon the marriage, but upon the fact of his obtaining possession. The right of the legatee does not originate in the common law, and is not governed by the old

rule, which disables the wife from taking for her own benefit. It is a right which cannot be asserted at common law, and can be sustained only in a court of equity. The personal estate of the testator vests in the executor for the payment of debts, who is a trustee for the legatee, after the primary trust for creditors shall be satisfied. As courts of equity grew up under the control of civilians, they have adopted the principles of the civil law, which views the rights of married women with much more liberality than the common law. Legacies, therefore, bequeathed to a married woman, have never been classed with conveyances at common law, but with choses in action, and vest an equity in the wife herself, in which the husband participates, so far only, as to assert her title in a court of equity. The property does not become his, nor is it subject to the liabilities which attach to that which is his, until it shall be reduced to possession. Till then, his creditors have no claim to it. If he dies, living the wife, before reducing it to possession, his power is not transmissible to his representatives, but dies with him. Since the claim of the creditor extends only to the property of the debtor, it cannot reach a legacy until it becomes his property. It follows, then, not only because mere rights cannot be taken in execution without the aid of some special legislative provision, but because, also, there is no title in the husband to the thing itself, that a legacy not reduced to possession, is not liable for his debts. Can a court of equity subject it to them?

The books furnish no case in which this naked question has been brought before the court. This is, of itself, a strong, we think, conclusive argument, against the right. That a creditor has never applied to a court of chancery to interpose in his favour, and subject the choses in action, or the equitable rights of the wife, to his claim against the husband, demonstrates the universality of the opinion, that equity affords no aid in such a case. It is true, that the assignees of a bankrupt are permitted to assert this right. But it is equally true, that they represent the bankrupt, as well as his creditors, and that all the marital rights of the husband are transferred to them. When they come into a court of equity, asserting a claim on the equitable interests of the wife, they exercise the marital right to reduce those interests to possession, not any pre-existing right of the creditors. In such a case, the court grants its aid, on such conditions as its own rules prescribe, and will never permit the husband, or his assignees, to receive the property of the wife, but on such terms, on making out of it for herself and children such provision, as, on a view of all the circumstances of the case, may be deemed equitable. This uniform course of a court of equity, would be incompatible with a previously existing right in the creditors. This rule has never been recognized, so far as we

are informed, in the courts of Virginia, but it has never been denied, and we can conceive no principle on which it should be denied. That those who ask equity should do equity, is a fundamental rule of that court, which enters into, and mingles with, all its decisions; and that the property of a married woman should not be taken from her, without making some provision for her, is as equitable in Virginia, as elsewhere.[2] Our statute of distributions, does not, we think, alter the case, by making the husband a purchaser of equitable interests which may come to the wife during marriage. We can find no case in which a husband has been considered a purchaser of the equitable interests, or choses in action of the wife, without some specific agreement by which he becomes so; and the act of assembly contains no declaration to that effect. It would be unreasonable to put this construction on it by implication, because the consideration supposed to be given by law for her estate, remains in the power of the husband. The court of chancery will not enable a freeman of London [3] to obtain the personal estate of his wife, without a settlement on her. Suits have been brought to assert the marital right of reducing her property into possession, but in no case that we have seen, has her equitable right to a maintenance been doubted. Were this a suit by the husband and wife for her legacy, the court would, certainly on the application, in England, without such application, direct a reasonable provision for her maintenance. As the case stands, the husband has relinquished his marital rights in this subject, and the question is, whether a court of equity will disregard or control this relinquishment in favour of creditors. As a general question, we can find no precedent for doing so. The husband has no interest in the legacy; he has only a power to make it his by reducing it to possession. Till this power is exercised, the property remains hers. We can find no case, in which creditors have required the aid of the court, to compel the husband to reduce it to possession, or in which a court has restrained the effect of a previous relinquishment of this marital right on the part of the husband. As a general proposition, we should consider this relinquishment valid against creditors; and if it is not so on the present occasion, its invalidity must be produced by the particular circumstances of the case.

[2] The English books abound with cases establishing this rule of equity, and the principle has very generally been adopted in this country. See Ex parte Beresford. 1 Desaus. Eq. 263; Howard v. Moffatt, 2 Johns. Ch. 206; Glenn v. Fisher, 6 Johns. Ch. 33; Kenny v. Udall, 5 Johns. Ch. 464; Udell v. Kenney, 3 Cow. 606; Fabre v. Colden. 1 Paige, 166; Carter v. Carter, Id. 463; Mumford v. Murray, Id. 620; Smith v. Kane, 2 Paige. 303. This rule is adverted to and commented on by Green, J., in Gregory's Adm'r v. Marks' Adm'r, 1 Rand. (Va.) 372.

[3] Adams v. Peirce, 3 P. Wms. 11.

What are those circumstances? In August, 1814, Henry Newman, the husband of the plaintiff, drew bills on Joseph Gallego, the testator, for $2000, and at the same time, addressed a letter to him, soliciting his acceptance of them, and promising repayment. These bills, with the letter of Mr. Newman, were presented to Mr. Gallego, in Baltimore, in June, 1815, who accepted them, and made arrangements for their payment in Richmond. He communicated the transaction to Mr. Poiton, his partner in this place, in a letter which contains this sentence: "Be so good as to debit Mr. Henry Newman, senior, to notes payable, for the sake of form, and that the amount may appear against him or his heirs, when I am no more, to be deducted out of the share coming to the family." It also appears, that this debt was charged to Newman on the books of the testator, and remained on his books till his death. His will was made in the year, 1818. Some objection was made to the admission of the letter from Mr. Gallego to Mr. Poiton, the plaintiff considering it as irrelevant, since parol and extrinsic testimony, cannot affect the construction of a will. It is undoubtedly true, that this letter cannot affect the construction of the will, nor does the court look into it with that view. If it has any bearing on the question under consideration, it is on an entirely distinct part of it.

Although the legacy given to the wife does not become the property of the husband, unless reduced to possession, yet he has a right to reduce it to possession, and may demand the aid of a court of equity for that purpose, which aid will be furnished as of course, unless the court be restrained from affording it, by considerations which are never disregarded. These considerations are extrinsic of the will, and depend on parol testimony. Such testimony must be admitted for this purpose. In cases where the husband does not voluntarily relinquish his claim to a legacy bequeathed to his wife, but asserts that claim in equity, if a distinct claim be also asserted for the wife, the court does not, as a matter of course, settle the whole on the wife as her separate property, but secures the whole, or part of it to her, according to circumstances. Where, as in this case, the husband voluntarily relinquishes his marital rights, the court will, undoubtedly, sustain that relinquishment, unless it be made in fraud of the rights of others.

In this case, there is reason to believe, that the husband is insolvent, and that he has relinquished to his wife that she may receive and enjoy the legacy bequeathed to her, secured from his creditors. In this, there is no injustice; his creditors trusted to his own resources for payment of their claims, and had no right to count on the fortune of Mr Gallego. Creditors, generally, therefore, cannot compel him to reduce the legacy of his wife to possession for their benefit: but the application of this rule to a creditor, who is

in rightful possession of the legacy, and has probably trusted the husband in the confidence that the means to secure repayment are in his own hands, is very much questioned. The relinquishment of the husband, and the consequent separate claim of the wife, may be considered as parts of the same transaction, and if the relinquishment was iniquitous, the claim, so far as it depends on that relinquishment, cannot be supported. If it was perfectly clear that the testator, at the time of making his will, or at the time of his death, intended this advance to the husband to be set off against the legacy to the wife, the court would feel great difficulty in disappointing such intention. But this is not perfectly clear; the debt is due from Newman, the legacy is given to his wife. The debt, therefore, may still exist, and yet not be a set-off against the legacy. Had the money been advanced subsequent to the date of the will, there would have been more reason for considering it as satisfaction in part for the legacy, but even then, it would not necessarily be so considered.[4] But this advance being made anterior to the will, gives countenance to the opinion that the testator did not intend it as a deduction from the legacy. The will being subsequent, and to a different person, furnishes probability to the opinion, that if a provision for the debt had been in the mind of the testator, his will would have given some indication of his intention respecting it. It is also a consideration not to be disregarded, that the fund out of which this legacy is to be paid, does not comprehend the debt due from Newman. The circumstances of the parties, and, indeed, the two letters introduced into the cause, lead to the opinion that the testator made frequent advances to his relations, and that this particular advance might not be in his mind, when his will was made.

The court does not perceive in the case, any satisfactory evidence that equity ought to restrain the full operation of the instrument by which Henry Newman relinquishes his marital right in this legacy to his wife, and is, therefore, of opinion, that it ought to be allowed its full effect.