## BUTLER AND WIFE vs. THE MERCHANTS' INSURANCE COMPANY OF THE CITY OF MOBILE.

1. By the third section of the bankrupt act of 1841, not only the property in possession, but actions pending, and mere rights of action, of every one who is regularly declared a bankrupt, vest *eo instanti,* in the assignee appointed for that purpose.

2. Where the husband conveys, by way of release, to the wife, for her sole use and benefit, all the right, title and interest, he had acquired, by virtue of their marriage, to certain stock in an incorporated company, as also the right to sue the company for permitting the unlawful transfer thereof, such a conveyance will be inoperative *at law;* and the rights of the husband attempted to be released, will, upon his being declared to be a bankrupt, vest in the assignee in bankruptcy.

Writ of Error to the County Court of Mobile.

The plaintiffs in error declared against defendants in an action on the case ; stating that Helen N., at and before her intermarriage with her co-plaintiff, Thomas J., was entitled to, and possessed in her own right, and as her own property, of fifty shares of the capital stock of the defendant, (a corporation,) of the value of ten thousand dollars ; which stock was then, and previously, standing in her name in the books of the Company. That Helen N., before her marriage, and herself and husband since, were entitled to the dividends, &c. accruing on that stock, and to have and demand the same of and from the defendant. It is averred that the defendant, in violation of the rights and property of Helen N., before her intermarriage with her co-plaintiff, suffered the fifty shares of stock to be transferred on the books of the corpo-

ration, without her authority, (or that of any person duly authorized,) to Samuel St. John, jr., and the certificate that had been previously issued by the Company to her was cancelled and revoked, so that the stock, with the dividends thereon, were wholly lost, &c.

The defendant pleaded, that the plaintiff, Thomas J., after his marriage with Helen N., and after the accrual of the several causes of action in their declaration mentioned, became a bankrupt, under and according to the act of Congress, passed August 19, 1841; and the District Court of the United States for the Southern District of Alabama, in pursuance of that act, previous to the commencement of this suit, declared Thomas J. a bankrupt, and such further proceedings were had in that Court, that he received his final certificate and discharge, &c. It is then averred, that all the property, and rights of property, of Thomas J., with the exception specified in the act, vested in Ptolemy T. Harris, the assignee appointed by the District Court, &c.; and the shares of stock supposed to be held by Helen N., and claims for dividends thereon, vested in the assignee.

The plaintiffs replied, that before their intermarriage, the defendant had permitted the transfer of the stock as stated in the declaration, and that after their intermarriage, but before the application of the said Thomas J. for the benefit of the bankrupt act, and before any decree was rendered against him, he did convey, by way of release, to the said Helen N., for her sole use and benefit, all the right, title and interest he had acquired by virtue of their marriage, to the stock, as also the right to sue the defendant for permitting the unlawful transfer thereof.

The defendant craved oyer of the release set it out, and demured. The release bears date six days before the plaintiff, Thomas J. was declared a bankrupt, and recites that Helen N., previous ty the intermarriage of herself and co-defendant, was entitled to certain property and estate, rights and credits in her own right, and also to all the benefits secured to her by law as the heiress of her father Joshua B. Leavens, then deceased; as well as the benefits accruing to her under the will of her father, recorded in the County Court of Mobile. All which estate of Helen N., then unsettled, remained in the hands of the executor of Joshua B., undisturbed and undivided, not recovered, nor in any manner redueed into possession by Thomas J. And Thomas J. having

determined not to take any steps to reduce the choses in action, &c. of his wife into possession, but has elected to abandon the same, and renounce all his marital rights therein, and release to Helen N. his contingent marital right unto her said separate estate and choses in action, and to vest in her full and exclusive power to recover and reduce the same into her own possession, should she think proper so to do, for her sole and separate use and benefit, and the benefit of her heirs, &c. free from all claims of her husbend, and all others claiming through or under him.— The instrument then proceeds to release, &c., to Helen N., her heirs, &c., forever, all his claim, right, interest, property, &c. in and to every thing to which she was entitled, either in law or equity, in consequence of his marriage with her, and which he had not reduced into possession; so that the same may be recovered by Helen N., and held and enjoyed by her in her sole and separate right, &c. The demurrer was sustained, and the plaintiff declining to plead further, judgment was render ed for the defendant.

DARGAN, for the plaintiffs in error, made the following points:

1. If an incorporated company improperly transfer stock standing in the name of a subscriber, so that the stockholder's right is reduced to a mere chose in action, he may maintain an action against the company. [9 Eng. Com. Law, 444; 2 Eden's Rep. 299.]

2. The right, of the wife, being a chose in action at the time of the marriage, did not vest absolutely in the husband, and his deed in favor of the wife, vested the entire and exclusive interest in her. [2 Brock. Rep. 285; 3 Paige's Rep. 440; 4 Id. 64; 10 Peters' Rep. 594; 1 Atk. Rep. 259, 270-1; 5 Ves. Rep. 78; 2 Swanston's Rep. 109.] And the subsequent bankruptcy of the husband did not impart to the assignee the right to sue for the improper transfer of the stock. [Owen on Bankr. 125; Eden on Bankr. 192; 1 Term Rep. 356, 619; 3 Bos. & P. Rep. 40; 1 M. & S. Rep. 326; 1 P. Wms. Rep. 316.]

3. It is supposed by the defendant's counsel, that the plaintiff, Thomas J., must have filed his petition in bankruptcy before the deed of release was executed, because it bears date but six days before the decree adjudging the petitioner a bankrupt was rendered, and the act of Congress requires that twenty days shall

intervene between the filing of the petition and decree. The date is an immaterial part of a deed, and may be shown to be untrue—it cannot outweigh upon demurrer, the allegation that the deed was executed before the petitioner sought the benefit of the bankrupt law; otherwise the plaintiff would be prevented from showing that the deed was made and delivered long before it bears date. It must be intended from the replication that the release was executed before the petition was filed.

The application of Thomas J. was voluntary, and could be dismissed by him at any time until the final decree was rendered ; neither his wife nor creditors could control him in the prosecution of his suit. The interlocutory decree did not vest in the assignee, the wife's choses in action, or take from the husband the right to relinquish to her his claim to them. The release does not operate as an original conveyance, but as a mere renunciation of title to one who has a paramount equity. The husband might refuse to reduce the wife's choses in action into possession, and he may have avowed such to have been his determination before he filed his petition in bankruptcy; if so, the institution of that proceeding voluntarily, would not render the release inoperative,

J. A. Campbell, for the defendant.—The replication admits the fact that a decree was rendered in pursuance of the act of Congress, but contradicts the release as to the time when the petition was filed. This contradiction could only be taken advantage of by craving oyer of the release, setting it out and demurring. [1 Chit. Plead. 415, 660; 1 Saund. Rep. 468, and notes.] Taking the date of the release to be true, and it is obvious that the petition was filed before it was executed ; and there must have been twenty day's notice of the petitioner's application, in order to make the decree regular—this it must be supposed was given. [3 § of Bankr. Act of 1841 ; Eden's Bankr. Law, 205.]

The facts set forth in the replication does not avoid the bar of the plea. [2 § Bankr, Act. of 1841.] A court of law recognizes no dealing between the husband and wife ; though a Court of Chancery will sometimes sustain a settlement or other equivalent act by the husband, yet a court of law will treat it as invalid. In a case like the present, the wife could assert her rights against the assignee, under all the equities of the case. [2 Vern.

Rep. 565; 1 P. Wms. Rep. 458; 2 Atk. Rep. 562; 1 N & McC. Rep. 33; 1 Green's Rep. 398.] The choses in action of the wife vest in the assignees of the husband, at least so far as to prevent the latter from making any disposition of them. [Roper on H. and Wife, 140 ; 1 P. Wms. Rep. 248 ; 3 Vesey's Rep. 617 ; Clancy on Rights, &c. 476 ; 2 Kent's Com. 138.]

As to the plea, it is believed to be free from objection. [1 Chit. Plead. 17 ; 15 East's Rep. 622 ; 11 Eng. Com. Law Rep. 348.]

COLLIER, C. J.—The third section of the bankrupt act of 1841, enacts " That all the property and rights of property, of every name and nature, whether real, personal or mixed; of every bankrupt, except as is hereinafter provided, who shall by a decree of the proper court be declared to be a bankrupt within this act, shall by mere operation of law, *ipso facto*, from the time of such decree, be deemed to be divested out of such bankrupt, without any other act, assignment, or other conveyance whatsoever ; and the same shall be vested by force of the same decree, in such assignee as from time to time shall be appointed by the proper Court for this purpose," &c. " And the assignee so appointed, shall be vested with all the rights, titles, powers and authority to sell manage and dispose of the same, and to sue for and defend the same, subject to the orders and direction of such court, as fully to all intents and purposes as if the same were vested in, or might be exercised by such bankrupt before or at the time of his bankruptcy declared as aforesaid ; and all suits at law or in equity then pending, in which such bankrupt is a party, may be prosecuted or defended by such assignee to their final conclusion, in the same way and with the same effect as they might have been by such bankrupt," &c. There is a proviso, which excepts from the provisions of this section, household and kitchen furniture, &c. not exceeding in value, in any case, the sum of three hundred dollars ; also the wearing apparel of the bankrupt, &c.

The terms of this enactment are exceedingly comprehensive, and operate not alone upon the property of the bankrupt, of which he is in possession, but upon actions pending, and mere rights of action ; so that it is important to inquire, whether the husband at the time of the application to be discharged as a bankrupt, had any right growing out of the cause of action stated in the declaration.

Marriage, it is said, operates as an absolute gift to the husband

of all the personal chattels of the wife which were in her possession at the time of the marriage. Choses in action are mere rights, arising from contracts expressed or implied, which must be asserted at law for the purpose of being reduced into possession, as money due on simple contract or by specialty, damages for the breach of promises expressed or implied, &c. When such rights of action belong to a woman at the time of her marriage, they become vested in her husband and he acquires a qualified property in them; that is he may reduce them into possession during his wife's life-time, and then they become his property absolutely; but if he die without having reduced them into possession, they become his wife's by survivorship, and if she die in the life-time of the husband, he shall have them only as her administrator. [Clancy on H. and Wife, 2–4; 2 Kent's Com. Lecture 28, on H. and Wife; Legg vs. Legg, 8 Mass. Rep. 99–101; Howes v. Bigelow, 13 Id. 384; Stanwoood v. Stanwood, 17 Mass. Rep. 57.]

The right of the husband to the wife's choses in action, is recognized by law as something valuable, and may be disposed of by him, so as to cut off her right of survivorship, though they be not reduced into possession. Thus it may be barred by a settlement, either before or after marriage; by a release of the demand; by an award of payment to the husband; by a judgment and execution at the suit of husband and wife; by husband's assignment for valuable consideration, &c. [Clancy on H. and Wife, 110–136.]

It is a rule of the English Common Law, that a married woman cannot possess personal property, and that every thing of this nature to which she is entitled at the time of her marriage, and which accrues in her right during its continuance, is vested solely in her husband; they are but one person, and all the rights and duties which are her's at the period of the marriage, become his during its continuance. Hence, it is said that a man cannot by any conveyance at the common law, limit an estate to his wife, and if a joint estate be conveyed to husband and wife, and a third person, the husband and wife would take a moiety. The unity of their persons, disables her to possess personal property, and the husband being the head of the wife, all that she hath belongs to him. [Clancy on H, and Wife, 1, 2; 2 Steph. Com. 296; 2 Kent's Com. 136.]

These are the rights and disabilities of the wife, at law, so far as it is necessary now to consider them. But the husband may grant to, or contract with a third person, as trustee for the wife; and if he conveys land to a third person, to her use, that will be an effectual conveyance under the statute of uses. [2 Steph. Com. 297.] If the husband makes a gift to his wife to her separate use, equity will regard him as a trustee; and if a conveyance be thus made by a third person without the interposition of a trustee, the husband will be considered such. [2 Kent's Com. 136; Clancy on H. and Wife, 256–261.]

The release (as it is called) to Mrs. Butler by her husband, is not the mere abandonment or discharge of a right of action; whatever the terms employed may be. If operative at all, it must be as a conveyance among other things of the husband's interest in, or right to the choses in action of the wife, which have not been realized by him. Releases, it is said, frequently operate as conveyances. [2 Bouvier's Dic. tit. Release.] Assuming such to be the character of the writing under which the title of the wife is attempted to be sustained, and the conclusion necessarily follows, that it is inoperative at law for all purposes. The effect of a conveyance (we have seen) from the husband directly to the wife, is not to invest the latter with any rights which a court of law will recognize; but as it respects that *forum*, the thing granted remains in the same predicament in which it was before the deed was executed. If the husband convey directly to the wife, property of which he is in possession, if the conveyance could operate to invest the wife with the legal title, as her head, and in virtue of the unity of their persons, her title would immediately vest in him: and a conveyance by the husband to the wife of his interest in her choses in action, would be alike inoperative, to take from him the right to sue for or assign them. A Court of Equity, in such case, is alone competent to give effect to such deeds, if they can be upheld. [2 Brock. Rep. 285; 3 Paige's R. 440; 4 id. 64; 10 Pet. Rep. 594.]

This brings us to the conclusion, that the wife, in the present case, can claim nothing from the release; and our inquiries might now close, but we will add a few words upon the effect of the husband's bankruptcy. It is said to be now settled, that neither the assignment produced by the bankruptcy, or the insolvency of the husband, will defeat the wife's title by survivorship to her

choses in action.   [Clancy on H. and Wife, 124.]   Owen, in his Treatise on Bankr. 118–122, says, that property, which the husband is entitled to in right of his wife, either upon or after his marriage, passes to the assignee, subject to the equity of the wife, and if the same be in the hands of trustees, or executors, or in other words not reduced into the husband's possession at the time of the issuing of the decree, the wife may claim her equity for a settlement; and if the assignee, in such case, file a bill in equity to recover the wife's property, equity will not interfere to relieve him, except upon the terms of making a suitable settlement upon the wife and children.   But if the assignee can recover without the intervention of a Court of Equity, it is said by the same author, that he will not be bound to make a settlement on the wife. Whether, if the deed in question, before the husband applied for the benefit of the bankrupt law, a Court of Equity would not give to the wife the entire benefit of it, is an enquiry aside from the present case.

The view we have taken, is conclusive of the cause as presented by the record; the consequence is, that the judgment of the Circuit Court must be affirmed.