## FORWARD et al. vs. MARSH.

1. An averment in a declaration, that an execution was returnable according to the statute, is to be understood as meaning, that the execution was returnable, on its face, to the term of the court, to which by law it should have been made returnable, and if, when offered in evidence, it appears to be returnable at a time different from that, it should be excluded on account of the variance.

2. Where an execution, on its face, is returnable at a time anterior to the term, to which by law it should have been made returnable, it may be amended, but until amended, the securities of the deputy sheriff or deputy bank marshal are not liable for money collected on it by such deputy after the day on which it was on its face returnable, and which he has failed to pay over. (Dargan, C. J., dissenting.)

Error to the Circuit Court of Clarke. Tried before the Hon. John Bragg.

This was an action of debt by the defendant in error, who was bank marshal, against the plaintiffs in error, who were the sureties on the bond of William Cleaver, the deputy of the defendant in error, for the failure of Cleaver to pay over money collected by him on an execution. The declaration describes the execution as dated on the 15th June 1844, and "returnable according to the statute." The execution offered in evidence appeared to be returnable on the *second* Monday after the fourth Monday in October 1844, when, by the statute of the 15th January 1844, it should have been made returnable to the court to be holden on the *fourth* Monday after the fourth Monday in October 1844; and on this account the plaintiffs in error objected to it as evidence, but the court overruled the objection and allowed it to be read. It was shown that Cleaver received the money on the execution on the 13th Nov. 1844, two days after it was, *on its face*, returnable, but more than ten days before the term of the court, to which it should have been made returnable. The court charged the jury that if the money was received before the time fixed by statute for the return of the execution, the securities were liable. The ruling and charge of the court were severally excepted to, and assigned as error.

Phillips, for the plaintiffs in error.

T. & J. Williams, for the defendant.

PARSONS, J.—The declaration alleges that the execution was returnable according to the statute, which means, if it means any thing, that, on its face, it was made returnable to the term to which it should have been returnable, according to the statute. But on its face it was returnable at a different time, and, therefore, it did not agree with the allegation and should have been rejected.—5 Wend. 276.

2. As Cleaver received the money after the time when the execution was made returnable on its face, but before the time when it should have been made returnable, the question is, are his sureties liable?

Marsh, as the agent of the Branch Bank of the State of Alabama at Mobile, under the act of 1843, (Clay's Dig. 118, § 86,) appointed Cleaver as his deputy, and this action was brought against the plaintiffs in error as Cleaver's sureties, for the faithful performance of his duties. In respect of the execution of all process, Marsh's powers and duties under the act, were the same as those of a sheriff; and the relation between him and Cleaver, as his deputy, was consequently similar to the relation between a sheriff and his deputy. The execution issued from the Circuit Court of Mobile county, in June 1844, and was placed in the hands of Cleaver. The clause in the execution which required a return is in this language: "That you have said sums before the judge of our said court, on the second Monday after the fourth Monday of October, A. D. 1844, to render unto the said Branch Bank the amount of debt and cost aforesaid, and have you then and there this writ." By an act approved 15th January 1844, the fall terms of the Circuit Courts for Mobile county were to be holden on the fourth Monday after the fourth Monday in October, in each year. Under the general statute the execution should have been made returnable to that term. Cleaver received the money from the defendants in the execution on the 13th day of November 1844. This was after the execution was returnable upon its face, but it was before the time when it should have been returnable under the general statute. If Cleaver's authority under the execution ceased from the time when it was made returnable, on its face, then his sureties were not liable.—Burton v. Lockhart, 2 S. & Port. 109. And it is our opinion that the execution, in respect of the period between the times when it was and when it should

have been returnable, gave no authority whatever to Cleaver, and that, therefore, his sureties are not liable for what he did during that time. This case is distinguishable from Finley and others v. Ritchie, 8 Ala. 152, and Love v. McRae, 12 ib. 444, since it is absolutely impossible to make this writ, by construction of its language, returnable to the term next after it was issued; for it is returnable to no court or term, but to the judge of the court, at a time which was before the term. If it were at all doubtful whether this execution, upon its face, was returnable to the term or at a different time, a construction which would make it consistent with the law would be adopted, but in this case there is no room for doubt, all is plain. The execution is upon its face clearly returnable before the time when the money was paid to Cleaver. Then if his sureties are liable, it is not because he acted under any existing authority in the execution, but because he may have acted under the laws that prescribed his powers and duties or those of the clerk. In this respect he is on a footing with a deputy sheriff, and the idea that he may act partly under the execution and partly under the statute, or a while under the execution, and, when that expires by its own limitation, then under the statute, is, to my mind, entirely new. If sued for an act, he may justify under the execution, but not, I apprehend, under the execution for one part of the amount recovered by the judgment, and under the statute or general law confering his powers or prescribing the duties of the clerk, for another, nor under the execution for part of the time during which he acted, and the statute for the rest. As he can justify for no act, save what the execution clearly authorises; it follows that the execution is his sole authority, and that he is not to be affected for good or for evil by the clerk's errors in issuing it. For them the clerk alone is liable.

In Shirly v. Wright, Holt, C. J., observed, "if a writ of execution bear test out of term, the sheriff is justifiable, and yet shall not be liable for an escape, for it is a void writ." If it is a void writ, why is the sheriff not liable if he acts under it? In Parsons v. Loyd, 3 Wilson's Rep. 341, Lord Chief Justice De Gray answers this question thus: "Parsons, the now plaintiff, has been illegally imprisoned under the color of a writ sued out against him, which is a mere nullity; he has been unlawfully injured, and must have a remedy; but he has none against the

officer, who is not to exercise his judgment touching the validity
of the process in point of law, but is obliged to obey the com-
mand of the courts at Westminster, or other superior courts
having general jurisdiction, and he may justify under the writ,
although it is void." So, he and Holt, Chief Justice, thought
alike, that the sheriff might rely upon his writ, whether right or
wrong, although the writs in those cases were void, except as
against the sheriff, for errors on their face; but it was thought
unreasonable to make the sheriff the judge of that. These cases
strongly show that the writ, as it is, is the sheriff's authority.
Its invalidity, as it respects the parties, is a very different ques-
tion. The principle is, therefore, that the sheriff is not to judge
of the defects of the writ, but *must* obey it, if valid, and *may*, if
void. But there is no rule or principle that enables the sheriff
to act beyond the mandate of the writ, and to justify under the
statute for the excess. The writ of *fi fa.* in this case was
amendable, I am aware. Such a writ was made returnable "on
the Thursday after the morrow of All Souls," instead of "on the
morrow of All Souls," and the court allowed it to be amended,
by the award of execution, which showed how it should have
been made returnable.—Atkinson v. Newton, 2 B. & Pull. 337,
and see 5 Taunt. 606. But this execution was not amended,
and, therefore, the powers and duties of the officer are the same
as if it was not amendable. I have looked into various cases,
in which questions as to the amendment of executions were
presented, and in all, the order of the court for that purpose has
been had; I have not met with a case, in which it was supposed
to be unnecessary. Under the various statutes of *jeofails* in
England, which are so called because, when the pleader per-
ceived any slip in the form of his proceeding, and acknowledg-
ed his error, he is at liberty by those statutes to amend it, an
amendment is seldom actually made, but the benefit of the act is
attained by the court overlooking the exception. In England
there are only two statutes of amendment, 14 Ed. 3 Stat. 1 *c.* 6.,
and 8 Hen. VI, *c.* 12 and 15; the rest are reckoned to be statutes of
*jeofails*, and not of amendments.—1 Tomlin's Law Dic. 71.
The statute of 8 Hen. VI, *c.* 12, which is one of the two stat-
utes of amendments, gives power to the courts to amend what
they shall think, in their discretion, to be the misprision of their
clerks, in any record, process, and plea, warrant of attorney,

writ, or pannel or return.—Ib.  Our statute of 1807 is, in some respects, similar.  The English statutes of *jeofails* do not extend to writs of execution.—Archbold's Practice, 278, part 2. The defects to which they extended were, after verdict, the want of a warrant of attorney, the want of an original writ or bill, or any defects of form therein, mistakes and omissions of pleading, misjoining of issues, &c.  And although, in some of those statutes, the courts are directed to amend the defects, yet an actual amendment is never made, but the exception is overlooked by the courts and the party thus attains the benefit of those acts; and for this reason, if error be brought for any defect aided by these statutes, the court acts as if the amendment were made.—Archb. Prac. 264; Strange, 1011.  The result is in England, that actual amendments were not necessary under the statutes of *jeofails*, because the defects were overlooked, or considered as amended.  So far as our statute is similar to those, the same doctrine may well apply; but as they do not, in England, apply to the case of an irregular or defective execution, the reason of that must apply here, if it is good there; and the reasons there and here are obvious to all and require no remark.  Then, the defect of this execution, not being one that will be overlooked or considered as amended, the officer's authority to act, after the execution was made returnable, cannot be supported by any such reasoning.  But the courts may give leave to amend as the cases show.  See some of the cases cited in Archb. Prac. 278. This they may do on terms, or without terms, or in proper cases may refuse to allow the amendment.  But this execution was never amended, and it was not the officer's duty to get it amended.  And he could no more extend the authority of the execution by acting under it, after it had expired by its own limitation, than he could supply the total want of an execution, by acting as if there was one.  His act was unauthorised, and did not bind his sureties, as we think.

Let the judgment be reversed, and the cause remanded.

DARGAN, C. J.—I cannot concur in the opinion delivered in this case.  The execution was amendable, and if amended, the money received by the bank agent would have been a satisfaction of the judgment; and for that reason, I think the money was collected officially, and that its non-payment was a

breach of the condition of the defendant's bond.　I admit that if money is received by a sheriff or other officer, after the return day of the execution, his securities are not bound, if he fails to pay it over; but the reason of this is, that the money, not being received officially, works no satisfaction of the judgment, and notwithstanding such payment, another execution may be issued; but when the payment to a sheriff can be relied on by the defendant as a satisfaction of the judgment, I cannot see how the sheriff or his securities can say this payment was not made to the sheriff officially.